CRAIG, STATE TAX COLLECTOR, v. J. A. JONES CONST. CO., INC.

(In Banc. Sept. 27, 1943.)

[15 So. (2d) 45. No. 35416.]

Creekmore & Creekmore and **Forrest B. Jackson**, all of. Jackson, for appellant.

**Toxey Hall,** United States Attorney, and **A. Y. Harper,** Assistant United States Attorney, both of Jackson, and **Samuel O. Clark, Jr.,** United States Assistant Attorney-General, **Sewall Key** and **Alvin J. Rockwell,** Special Assistants to the Attorney-General, all of Washington, D. C., for appellee.

Argued orally by **Rufus Creekmore** and **Forrest B. Jackson**, for appellant, and by **Alvin J. Rockwell**, for appellee.

**Alexander, J.**, delivered the opinion of the court.

On September 10, 1940, appellee entered into a contract with the United States to construct a complete tent camp at Camp Shelby, Mississippi. The contract price as fixed by agreements supplemental to the original contract was $13,143,132.95, and such amount was paid to appellee upon completion of the work in May 1941.

On December 7, 1940, appellant filed his bill in the form of an attachment in chancery against the appellee as a nonresident corporation seeking to reach, in garnishment form, funds in the hands of a local bank. Such suit was filed pursuant to Section 57(a) of Chapter 120, Laws of 1940, then applicable. This section is as follows:

"Upon each person who offers or bids to contract for a fixed price, commission, fee, or wage to construct, repair, or to superintend the construction or repair of any building, highway, street, sidewalk, bridge, culvert, sewer, or water system, drainage, or dredging system, electric, or steam railway, reservoir, or dam, hydraulic or power plant, electric lighting or power system, steam heating plant or system, transmission line, pipe line, tower, dock, wharf, excavation, grading, water wells, gas wells, oil wells or other improvement or structure, or any part thereof, the contract price of which exceeds the sum of three thousand dollars ($3,000.00), shall, prior to offering or submitting any bid to contract for any of the named projects, apply for, pay for, and obtain from the state

tax commission a license as a contractor, in the sum of $25,00.

"Said tax shall be an annual tax, and shall be paid prior to the submission of any offer, or bid to contract for any of the projects mentioned in the foregoing paragraph, and shall entitle the holder thereof to the privilege of submitting bids at any place within this state during the full period of twelve months from the date of issuance thereof. No person shall be entitled to submit bids for any project, the contract price of which exceeds the sum of $3,000.00, until he has procured said license, and failure to procure said license as a contractor before entering into any contract in excess of $3,000.00, shall render such proposed contract void."

The amount of privilege tax was computed under paragraph (b) of said section, which is as follows: "Any person who shall enter into a contract for a fixed price, commission, fee, or wage, to construct, repair, or superintend the construction or repair of any of the projects named in paragraph (a) hereof, or any part thereof, the contract price of which is in excess of $3,000.00, shall, before beginning the execution of such contract, apply for, pay for, and obtain an additional license from the state tax commission, computed at the rate of 50c per each one thousand dollars, or fractional part thereof. Said license when so obtained, shall entitle the holder thereof to enter into and execute the contract named in said license."

Section 244 of said Act provides that "All persons liable for privilege taxes who shall fail to procure the license therefor before beginning the business for which a privilege tax is required by this act . . . shall . . . be liable for the amount of the tax required for such business and fifty per centum thereof . . . ." Recovery was demanded for $6,713.07 as taxes, $3,356.53 as penalty, and $37.50 for pre-bid tax or license and penalty under Section 57(a).

In its amended answer appellee set up the contention that the State Tax Collector was without authority to

maintain the suit. In the final decree the learned chancellor found that this contention was well taken and thereupon dismissed the original and amended bills of complaint. It was elsewhere stated in the final decree that "the Chancellor . . . is of the opinion that the defendant is liable for the tax at the rate of fifty cents per thousand dollars of the total contract price, plus contractor's fee as shown by the stipulation but is not liable for the twenty-five dollar preliminary or bid tax nor for any penalty thereof or on the fifty cents per thousand dollar tax . . . ."

We need not pause to analyze these findings nor seek to lend them clarity, nor comment upon the absence of a decree for the payment of any sum. In view of the finding that the State Tax Collector was without authority to sue, which was the basis for the dismissal of the bills, we can see the quoted language only as a gratuitous expression of opinion as to what form the decree would have taken had the suit been maintained.

The only assignment of error we may consider is, therefore, that which involves the right of the appellant to maintain the suit. Appellee stands upon those cases of which Dunn Const. Co. v. Craig, 191 Miss. 682, 2 So. (2d) 166, 3 So. (2d) 834; Craig v. Stone, 194 Miss. 767, 11 So. (2d) 433; and Craig v. Southern Natural Gas Co., 193 Miss. 76, 8 So. (2d) 230, are typical. We do not find these cases in point as requiring prerequisite determinations by the State Tax Commission in the absence of which suit would be premature. It is true that section 57(c) provides that the application for license shall be made to the Tax Commissioner and section 57(f) requires public officials to report to the State Tax Commission all contracts entered into with any contractor for any project named in paragraph (a). It is also true that under Section 244 it is made the duty of the commissioner to collect the tax and that he may make demand and may issue warrant therefor. But neither these nor any other provision of the Act designate either this

duty or the right to enforce it by suit as exclusive in the commissioner. In this respect Dunn Const. Co. v. Craig, supra, is to be distinguished.

The duty and authority of appellant to maintain this suit is found in Code 1930, Section 6986, where he is given the "power and it shall be his duty to proceed by suit in the proper court against all persons, corporations, companies and associations of persons for all past due and unpaid taxes of any kind whatever . . . ." The sole exceptions therein are inheritance and income taxes and penalties under anti-trust laws. Other subsequent laws have limited his authority with respect to taxes imposed thereby. But such limitation has been express, as indeed it must be. We shall not seek to justify our conclusion by further reasoning from other provisions of the 1940 Act.

In view of our conclusion that the State Tax Collector had authority to bring the suit and that the cause must be reversed and remanded, it would be purely advisory to go into matters involving the nature and extent of recovery, if any, which should be allowed after a proper hearing on the merits.

Reversed and remanded.