314 So.2d 729 (1975)
D.H. PRICHARD et al., Trustees of the Northeast Mississippi Hospital, and Ralph Smith, Administrator
v.
Dr. Webster CLEVELAND, Jr., et al.
No. 48021.
Supreme Court of Mississippi.
May 19, 1975.
Rehearing Denied July 14, 1975.
*730 Thomas D. Keenum, Sr., Booneville, for appellants.
Riddick & McCoy, Jackson, for appellees.
Before GILLESPIE, ROBERTSON and SUGG, JJ.
ROBERTSON, Justice.
D.H. Prichard, Jack M. Dubard, Donald Franks, J.W. Henson, Jr., and Douglas Jumper, Members of the Board of Trustees for the Northeast Mississippi Hospital, and Ralph Smith, Administrator of the Hospital, appeal from a decree of the Chancery Court of Prentiss County enjoining them from leasing a part of the hospital facilities (formerly used as nurses' quarters) to Dr. R.M. Brown, a general surgeon engaged in the private practice of medicine.
In their amended bill of complaint, Dr. Webster Cleveland, Jr., Dr. Paul C. Ellzey, Dr. S.C. Galloway, and Dr. Joseph L. Hurst, averred that they are private practicing physicians in the City of Booneville, Mississippi, that they own a diagnostic and treatment facility known as The Medical Clinic, which they constructed and equipped with their own private funds and which they maintain and operate with their own private funds. They averred also that they are taxpayers of both the City of Booneville and Prentiss County, and that their taxes go to retire bonds which were issued and sold and the proceeds used "to build, maintain, renovate and enlarge the Northeast Mississippi Hospital and other parts of the Hospital property, specifically the Nurses' Home."
They further stated that they brought this suit "in their own behalf and in behalf of all other taxpayers similarly situated who are invited to join this action." They charged that the defendants expended $4,766.82 of public funds in renovating and converting about one-third of the space in the nurses' home to private office facilities which they leased for $300 a month to Dr. R.M. Brown for the private practice of medicine. They further charged that this expenditure was for an object not authorized by law, and that the Board of Trustees and Administrator did not have statutory authority to lease this space to Dr. Brown for the private practice of medicine.
Complainants prayed that the defendants be enjoined from leasing to Dr. Brown and "from providing office space of any kind or nature whatsoever for private practicing physicians in the City of Booneville, Prentiss County, Mississippi." The letter of April 21, 1972, from D.H. Prichard, President of the Board of Trustees of Northeast Mississippi Hospital, to the attorney for the complainants is attached as an exhibit to the Amended Bill of Complaint. Among other things, President Prichard wrote:
"After a thorough consideration of the substance of your letter and a careful review *731 of the facts relating to the matter, the board is of the unanimous opinion that there is complete justification for the action taken and can find no valid reason for a reversal of any action in question.
......
"The Board of Trustees also wishes to advise that the same type of repair and remodeling will be carried out on the remainder of the building in question to accommodate two new general practitioners who are expected to locate here on July 1, 1972. It is further anticipated that a third physician will join them in December and there is a strong possibility that another surgeon will also locate here by the end of this year."
Prichard went on to explain in the letter that the hospital facilities had been greatly expanded over the years, that there was a real shortage of qualified physicians and surgeons in the City of Booneville and Prentiss County because proper office space was not available, that the nurses' home had ceased to be used by the hospital nurses, and that the Board felt that it was their duty and responsibility to do all they could to encourage qualified physicians and surgeons to locate in the City of Booneville and Prentiss County so that the hospital facilities could be used to the fullest extent.
Dr. Paul Ellzey testified that when the complainants took in Dr. Galloway he vacated his office space within 150 to 200 yards of the hospital, that the complainants had been paying $225 per month rent for this office space since July 1, 1971, that they had not been able to rent out this space and it was still available for rent.
The community hospital is a special creature of the Legislature. Mississippi Code Annotated Section 41-13-15 (Supp. 1974), provides in part:

"Any county, city, town, supervisors district, judicial district or election district of a county, separately or jointly with one or more other counties, cities, towns, supervisors districts, judicial districts or election districts of the same or other counties, may acquire and hold real estate for a hospital, nurses' home, health center, health department, diagnostic or treatment center, rehabilitation facility, nursing home and related facilities and thereon establish, erect, build, construct, remodel, add to, equip, operate and maintain community hospitals, nurses' homes, health centers, health departments, diagnostic or treatment centers, rehabilitation facilities, nursing homes and related facilities within the limits of any such political subdivision or parts thereof." (Emphasis added).
The Northeast Mississippi Hospital is a community hospital jointly owned by Prentiss County and the City of Booneville. It is operated by a five-member Board of Trustees, three of whom are appointed by the Board of Supervisors of Prentiss County, and two of whom are appointed by the municipal authorities of the City of Booneville, all done in strict accord with the provisions of Section 41-13-31.
Neither the owners nor the operators of the Northeast Mississippi Hospital had authority, under the law (Section 41-13-15) to expend public funds to convert a portion of the nurses' home to private office facilities for lease to a doctor engaged in the private practice of medicine.
The Legislature amended Section 41-13-15 in 1972, 1973 and 1974 to provide that certain specific counties and municipalities within those counties:
"[M]ay acquire and hold real estate for doctors' offices and related health care facilities and thereon establish, construct, remodel, add to, equip, operate and maintain doctors' offices and related health care facilities and may lease same the said doctors' offices to doctors on hospital staff at a fair market value."
While we are not called upon in the case at bar to decide the constitutionality *732 of the amendments of Section 41-13-15, we do note that Prentiss County was not one of the counties added. Therefore, Prentiss County does not have authority under Mississippi Code Annotated Section 41-13-15 (Supp. 1974), to convert hospital nurses' quarters into private doctor's offices and to lease these converted facilities to a doctor engaged in private practice. The Board of Trustees and the Administrator of the Hospital thus used public funds for an object not authorized by law. The complainants, as taxpayers, had standing to bring this suit and the chancellor was correct in enjoining the defendants from leasing office space in the converted nurses' quarters to Dr. Brown for the private practice of medicine for his own individual gain. Saxon v. Harvey, 190 So.2d 901 (Miss. 1966).
We can sympathize with the Board of Trustees and the Administrator of the Northeast Mississippi Hospital in their peculiar problem of trying to secure a sufficient number of qualified physicians and surgeons for the Prentiss County area, but the remedy must be provided by the Legislature; it cannot be provided by the Courts. It is the duty and responsibility of the Courts to construe and interpret the law, not to make it.
The decree of the Chancery Court is affirmed.
Affirmed.
This case was considered by a conference of the Judges en banc.
All Justices concur except GILLESPIE, C.J., and RODGERS, P.J., who dissent.
GILLESPIE, Chief Justice (dissenting):
I respectfully dissent.
Although it seems to me to be a close question, I concede for the purpose of this dissenting opinion that there was no lawful authority to lease a part of the hospital for a physician's private office.
The complainants did not have standing to maintain the suit. The fact that complainants were physicians in competition with Dr. R.M. Brown did not entitle them to maintain the suit. In regard to the contention that this was a taxpayers' suit, this case, in my opinion, is controlled by Mississippi Code 1972 Annotated section 11-45-17 as interpreted by this Court in American Oil Company v. Interstate Wholesale Grocers, 138 Miss. 801, 104 So. 70 (1925), and Mississippi Road Supply Co. v. Hester, 185 Miss. 839, 188 So. 281 (1939).
Section 11-45-17 provides in part, "[B]ut suit shall not be brought by the county without the authority of the board of supervisors, except as otherwise provided by law."
There is nothing in the record to indicate that complainants had obtained the consent of the board of supervisors to file their bill of complaint. Likewise, complainants failed to cite any statute which authorized them to bring this suit.
American Oil Company, supra, is similar to the case at bar. The Board of Supervisors of Marion County had leased real property to the American Oil Company. Interstate Wholesale Grocers filed a bill in the chancery court charging that complainant was a taxpayer of Marion County and seeking a decree cancelling the lease on the grounds that the board lacked authority to enter into such an agreement. The chancellor cancelled the lease, but on appeal, this Court reversed. The opinion cited what is now section 11-45-17 and stated that the sections of the code which now appear as 19-13-37 and 19-3-5 are the only two instances in which a private citizen is authorized to bring suit. The opinion also states:
It is clear that the bill does not come under the provisions of either of the above sections.
It is a familiar rule that, where the law specifies conditions upon which an action *733 may be maintained or a thing done, the naming of certain things will by implication exclude the things not named under the rule... .
It would be manifestly confusing to public business and troublesome to the officers charged with the administration of public affairs if any citizen of a county may at any time challenge the legality of the actions of the board of supervisors or of any of its contracts. Where the board undertakes to impose a burden upon a citizen without authority of law, he may then contest the legality of the action, not on behalf of the county, but to vindicate his own rights if he be affected by such action; that is to say, if he would have an additional burden imposed on him by such act of the board. But this does not authorize him to litigate contracts made by the county in which he has no property or financial interest... . A county cannot be harassed by suits brought by that class of benevolent citizens who feel called on to intermeddle by way of lawsuits with any action taken by the county authorities which does not meet with their approval.
In our view the suit here brought is unauthorized, and the judgment of the court below will be reversed and the appeal dismissed. 138 Miss. at 820, 821, 104 So. at 72.
Section 19-3-5 concerns the bond to be executed by a member of the board of supervisors and provides in pertinent part as follows:
Such bond shall be a security for any illegal act of such member of the board of supervisors, and recovery thereon may be had by the county for any injury by such illegal act of such member. Furthermore, any taxpayer of the county may sue on such bond, for the use of the county, for such injury, and such taxpayer shall be liable for all costs in case his suit shall fail.
Section 19-13-37 provides:
If a board of supervisors shall appropriate any money to an object not authorized by law, the members of the board who did not vote against the appropriation shall be liable personally for such sum of money, to be recovered by suit in the name of the county, or in the name of any person who is a taxpayer suing for the use of the county, and such taxpayer shall be liable for costs in such case.
Neither section is applicable to the case at bar. Complainants did not pray for recovery of any public funds spent in converting the hospital facility into a physician's office. Moreover, not a single member of the board of supervisors was made a party defendant. Complainants only sought to enjoin the leasing of the property. Even if complainants had sought to recover public funds spent in converting the facility for a doctor's office, such expenditure was for an object authorized by law. In accord is Mississippi Road Supply Co. v. Hester, supra, wherein this Court stated:
The right of a taxpayer to bring suit on behalf of a county or the public is only such as is authorized by statute. The statutes have provided for officers whose duties are defined by law, who are to bring suits in proper cases in behalf of counties, state, and other public bodies. These officers are charged with a duty and a discretion; and they bring their judgment to bear upon whether or not a case is one for recovery of public moneys, or public obligations, and these are the representatives of the public; in all cases not otherwise provided for, as we see and understand these statutory provisions authorizing the taxpayer to sue, the power extends only to suits for moneys paid to an object not authorized by law, and not for paying out money to an object authorized by law in violation of statutory directions. One of the sections which provides for suits by a taxpayer *734 is section 259, Code of 1930, which provides:
"If a board of supervisors shall appropriate any money to an object not authorized by law, the members of the board who did not vote against the appropriation shall be liable personally for such sum of money, to be recovered by suit in the name of the county, or in the name of any person who is a taxpayer who will sue for the use of the county, and who shall be liable for costs in such case." 185 Miss. at 855-56, 188 So. at 285.
The Court then concluded:
Consequently, the Board of Supervisors was making contracts and voting funds for an object authorized by law, and a mere taxpayer has no authority to bring suit, and thus disturb and upset the public business and the public road system of an entire county. Suits by taxpayers must be confined to the authority conferred on them by law, and strict compliance with the law will be required of them. Such suits should not be authorized merely because a taxpayer conceives that public authorities are acting unadvisedly and improperly, or, in his judgment, illegally. But the facts which taxpayers set forth must show that the funds for the contract involved are not authorized by law. In our opinion, the authorities constituted by law, and vested with the power, are surely able and willing to bring suit in proper cases, for the correction of errors, or refusals of public authorities to follow a statutory direction. 185 Miss. at 863, 188 So. at 288, 289.
In my view the majority opinion cannot be reconciled with either the statutes or case law of this State. If the legislature has deemed it proper to restrict taxpayer suits it is not for this Court to expand them.
RODGERS, P.J., joins in this dissent.